UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

| | |
|---|---|
| UNITED STATES, : | |
| : | Case No. 1:20-cr-00839-JG-1 |
| Plaintiff, : | |
| : | |
| vs. : | OPINION & ORDER |
| : | [Resolving Doc. 22] |
| CLEOPHAS DAVIS, : | |
| : | |
| Defendant. : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The Grand Jury indicted Defendant Cleophas Davis on two counts of possession with intent to distribute controlled substances; one count of felon in possession of firearm; one count of possession of firearm by person with a prior misdemeanor domestic violence conviction; and one count of using or carrying a firearm during and in relation to a drug trafficking crime.[1]

Defendant Davis moves to suppress evidence obtained from a search of his person. Davis contends the seizure was not based on probable cause.[2] The Government opposes.[3]

The Court held a hearing on the motion on May 7, 2021.

For the following reasons, the Court **DENIES** Defendant Davis's motion to suppress.

I.    Background

The parties dispute certain facts underlying the current motion to suppress. On September 1, 2020, Cleveland police arrested Cleophas Davis at a house in the Bellaire neighborhood.[4] He had a gun and controlled substances on his person.[5]

---

[1] Doc. 14.
[2] Doc. 22.
[3] Doc. 23.
[4] Doc. 23 at 2.
[5] *Id.*

Case No. 1:20-cr-00839-JG-1
Gwin, J.

In the months leading up to September 1, 2020, the police surveilled a particular empty house on Guardian Boulevard.[6] The police received information that a local gang used the house to sell drugs.[7] On one occasion, the police tried to buy drugs at the house through a confidential informant but no one was at the house to sell.[8] In another instance, the police told three men standing around a car at the house that they were trespassing.[9] During that interaction, the police found "t wo firearms, a large quantity of drugs, and a large amount of cash . . . from vehicles on or near the property."[10] Defendant Davis was present at the time police found the firearms, drugs, and cash but not arrested.[11]

On September 1, 2020, police observed a van backed into the house's driveway and parked facing out toward the street. The police saw four people in the van.[12] Defendant Davis was laying down across the back row of seats.[13]

The parties dispute what happened next. The police say that they approached the minivan and identified themselves.[14] As they approached, Davis stood up from the back seat and reached towards the gear-shift in an attempt to put the minivan into gear in to get away. But the effort failed driver did not move the van.[15]

While Davis stood to get to the gear-shift, Police Sergeant Mobley saw a gun in Davis's waistband or hand through the van's window.[16] He alerted the other police to the

---

[6] *Id.* at 2–3.
[7] Doc. 22 at 2.
[8] *Id.* at 2.
[9] Doc. 23 at 3.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Doc. 22 at 2.
[14] *Id.*; Doc. 23 at 3.
[15] Doc. 23 at 3.
[16] *Id.* at 3–4; Unedited Draft Transcript of Suppression Hearing, at 57, *U.S. v. Davis*, No. 1:20-cr-00839-JG-1 (N.D. Ohio filed Dec. 17, 2020).

-2-

Case No. 1:20-cr-00839-JG-1
Gwin, J.

gun and the police drew their weapons.[17] The police demanded that Davis drop his gun. At the same time, the backseat passenger door slid open. It is not clear who opened the door. The backseat passenger got out of the van, and the police were then able to see Davis holding a gun.[18]

Defendant Davis claims that the police approached the vehicle with their weapons drawn. He says the police opened the backseat passenger door and demanded that everyone exit the van.[19] At that point, Defendant Davis says he tried to present his gun to the police.[20]

Once Defendant Davis was out of the van and in police custody, he admitted that he had drugs in his pocket.[21]

## II. Discussion

The Fourth Amendment allows a "brief investigatory stop" when police have "a reasonable, articulable suspicion that a person may be involved in criminal activity."[22] A stop must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place."[23] Scope is "judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances."[24] An investigatory stop becomes an arrest requiring probable cause "[w]hen police actions go beyond checking out the suspicious circumstances that led to the original

---

[17] Doc. 23 at 3–4.
[18] *Id.* at 4.
[19] Doc. 22 at 3; Unedited Draft Transcript of Suppression Hearing, at 67.
[20] Doc. 22 at 3.
[21] *Id.*; Doc. 23 at 4.
[22] *Loza v. Mitchell,* 766 F.3d 466, 476 (6th Cir. 2014)(citing *Terry v. Ohio,* 392 U.S. 1 (1968)).
[23] *Terry,* 392 U.S. at 20.
[24] *U.S. v. Garza,* 10 F.3d 1241, 1245 (6th Cir. 1993); *U.S. v. Obasa,* 15 F.3d 603, 607 (6th Cir. 1994) (citing *U.S. v. Sharpe,* 470 U.S. 675, 682 (1985)) ("The scope of activities permitted during an investigative stop is determined by the circumstances that initially justified the stop.").

-3-

Case No. 1:20-cr-00839-JG-1
Gwin, J.

stop . . . ."[25]

Defendant Davis does not dispute that the police had reasonable suspicion to conduct a *Terry* stop of the minivan.[26] But Defendant alleges that the police went beyond the limits of an investigative stop from their first approach and did not have the required probable cause to arrest Defendant Davis.[27]

The Court agrees that the police had reasonable suspicion warranting a *Terry* stop. The Police had found drugs and guns in a previous stop at the house.[28] The police had information that the abandoned house was a drug-trafficking location.[29] Davis encouraged the driver to drive away by putting the minivan in gear as police approached.[30] Although the parties dispute some facts and, by all accounts, the events happened in just a few moments, the overall picture is that the police had a reasonable suspicion of criminal activity.[31]

The Court finds that the police acted reasonably and did not transform the *Terry* stop into an arrest. When Sergeant Mobley saw Davis's gun through the window, the officers were justified in drawing their weapons.[32] Once the door opened to reveal Davis holding his gun, the police officers were also justified in ordering everyone out of the van.[33] In light of the circumstances, this police conduct did not transform the investigatory stop into an

---

[25] *Obasa*, 15 F.3d at 607.
[26] Doc. 22 at 4.
[27] *Id.*
[28] Unedited Draft Transcript of Suppression Hearing, at 4.
[29] Doc. 23 at 2.
[30] Unedited Draft Transcript of Suppression Hearing, at 42–43.
[31] Doc. 22 at 3; Unedited Draft Transcript of Suppression Hearing, at 27, 43, 51.
[32] Unedited Draft Transcript of Suppression Hearing, at 56–57; *U.S. v. Hardnett*, 804 F.2d 353, 357 (6th Cir. 1986) ("[I]f the surrounding circumstances give rise to a justifiable fear for personal safety, a seizure effectuated with weapons drawn may properly be considered an investigative stop.").
[33] Doc. 22 at 3; Unedited Draft Transcript of Suppression Hearing, at 11, 13, 28, 39–40.

Case No. 1:20-cr-00839-JG-1
Gwin, J.

arrest.

Defendant Davis does not present sufficient evidence that the police had their guns drawn as they approached the minivan or that the police were responsible for the opened passenger door.[34] Defendant Davis testified that he saw the police approach with "flashlights and guns" and that the minivan's driver said the police were going to shoot. But Davis likely observed the police with firearms after they reacted after Sergeant Mobley had already seen Davis's gun and had already alerted the other officers that Davis was armed.

More importantly, the Government's police witnesses testified that they did not draw their guns until Sergeant Mobley saw Defendant Davis's gun.[36] The Court credits the officers' testimony.

The police acted reasonably and within the scope of the investigative stop when Defendant immediately tried to get the car to pull away and once they realized that Defendant Davis had a gun. Moreover, during a *Terry* stop, police can require that detainees exit a vehicle.[37]

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Davis's motion to suppress.

IT IS SO ORDERED.

Dated: May 20, 2021         *s/     James S. Gwin*
                            JAMES S. GWIN
                            UNITED STATES DISTRICT JUDGE

---

[34] *See* Unedited Draft Transcript of Suppression Hearing, at 43, 49–50.
[36] Unedited Draft Transcript of Suppression Hearing, at 9, 56–57, 58, 60.
[37] *Maryland v. Wilson*, 519 U.S. 408, 414 (1997) ("We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop."); *U.S. v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016).